McCONNELL & MERCHANT v. BRICK–PHILLIPS CO.

(Court of Civil Appeals of Texas. Austin. April 23, 1913. Rehearing Denied May 21, 1913.)

LANDLORD AND TENANT (§§ 182, 246*)—ACCEPTANCE OF BUILDING—LANDLORD'S LIEN.

Defendants contracted to lease to W. a theater, to be constructed, the building to be ready by June 1, 1911, or as soon thereafter as practicable. The lease was for five years; rent payable monthly. Defendants let the contract to erect the building to M., and, though the building was not completed by June 1, 1911, W. began the erection of stage fixtures and seats which he was to do at his own expense. He purchased the seats from plaintiff on credit and installed them in the building. In the latter part of August, the building was sufficiently advanced to enable W. to use the same as a theater, and he began giving shows therein early in September. Held, that such facts indicated at least a tacit agreement between M. and defendants that W. might occupy the theater without either waiving their rights under the contract, and when he began so to use the building he became liable for rent, and the fixtures in the building were subject to the lien of defendant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 732–735, 991–1002; Dec. Dig. §§ 182, 246.*]

Appeal from Tom Green County Court; Oscar Frink, Judge.

Action by the Brick-Phillips Company against McConnell & Merchant. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Hill, Lee & Hill and Blanks, Collins & Jackson, all of San Angelo, for appellants. S. C. Autry and Bell & Upton, all of San Angelo, for appellees.

Findings of Fact.

JENKINS, J. Appellants entered into a written contract of lease with one Weishert for a building to be erected by them; said lease being in part as follows: "That said McConnell & Merchant are to erect a building on said lots 50 feet wide and 125 feet long, according to the plans and specification submitted to and approved by the parties of the second part, said building to be completed and ready for occupancy by the first day of June, 1911, or as soon thereafter as practicable; and should said building be not then completed that said McConnell & Merchant are to rebate the rentals until said building is completed and ready for occupancy." The lease was for a term of five years, payable monthly in the sum of $200. McConnell & Merchant let a contract to erect this building to one M. A. Moon, the terms of which contract do not appear in the statement of facts. The building was not completed by the 1st of June, but was sufficiently advanced for Weishert to begin the erection of the stage fixtures and the seating of the building, which work was to be performed by him under the contract at his own expense, with the privilege of removing such fixtures at the end of the lease. These fixtures were purchased by Weishert from appellees, and were placed in the building during the summer months. In the latter part of August or early in September, the building was still not completed, but was sufficiently advanced to enable Weishert to use the same as a theater; he began giving shows in said building at least as early as September. After having given one or more shows, Moon, the contractor, asked him by what authority he was giving shows in the building. He stated upon the authority of McConnell. At this time some controversy had arisen as to whether or not the walls of the building were sufficiently strong; Weishert having raised the question. The walls were old walls of the building that had been destroyed by fire. It does not appear whether or not the contractor, Moon, was responsible for the stability of said walls; but, in discussing the matter with Weishert, McConnell told him that Moon said the walls would stand 100 years. Moon states that he had heard that there was some question about his being responsible for rents; and it appears that this was his reason for asking Weishert by what authority he was using the building, the building at that time not having been turned over to and received by McConnell and Merchant. Moon informed Weishert that he could not show in the building unless McConnell & Merchant received the building in its then condition. Thereupon Weishert presented to Moon the following written statement: "This is to certify that Merchant & McConnell have nothing to do with the house until completed and turned over to us. Any arrangements that Weishert makes with Mr. Moon will be perfectly satisfactory to us. [Signed] S. W. Merchant, San Angelo, Texas, October 10, 1911."

Moon testified that, notwithstanding this note, he made no further objection to Weishert's proceeding with his shows. About the 28th of October, 1911, Weishert informed McConnell that he would not go ahead with his contract, and that he had nothing with which to pay rents, and that McConnell could take charge of the fixtures which he had placed in the building. McConnell did not accept these fixtures in full payment of the amount due him, but did take possession of them, and subsequently, in February of the following year, sold the building, together with said fixtures; the building in the meantime not having been re-rented, and appellants being unable to rent the same. On October 24, 1911, Weishert executed to appellees a note for $301.30 for the fixtures

which they had placed in the building, and on the following day had executed to appellees a mortgage on said fixtures to secure said note, which was recorded on the same day.

McConnell testified that Weishert agreed to begin paying rent some time in August; that he had agreed with Weishert that he might commence his lease as soon as the inside of the building was finished. McConnell further testified that he never took possession of the building, as against the contractor, until after Weishert left.

This suit was against McConnell & Merchant for so much of the value of said property alleged to have been converted by them as was equal to the amount due appellees on said note. It is alleged that said property was of the value of $500. The court instructed the jury to find for the plaintiffs, unless they found that under the lease contract rent began to accrue in favor of McConnell & Merchant before the execution and recording of said chattel mortgage. The jury returned a verdict for appellees, and judgment was entered accordingly.

Appellants requested the following special charge: "Gentlemen of the jury, it appears without dispute that Weishert entered into possession of the Princess Opera House (the name by which the building was known) some time during September, 1911, and you are therefore instructed that at that date defendants' lien to secure rents attached to the property which the plaintiffs alleged to have been converted by the defendants, and that the lessor Weishert was responsible to the defendants for rents under his written contract from that date until the time defendants sold the Princess Theater." Appellants also requested a peremptory charge in their favor.

### Opinion.

1. Appellants insist that they were entitled to judgment, for the reason that, when Weishert entered the building and placed the fixtures therein, he was either a stranger, and therefore a trespasser, or he was the tenant of appellants; and that if a stranger became a part of the realty, and therefore their property; but if a tenant, and the fixtures under the contract remained personal property, they had a landlord's lien thereon.

2. Regardless of when Weishert became the tenant of appellants, we do not think he can be treated as a trespasser in placing the fixtures in the building. They were so placed with the knowledge and consent of appellants, and in contemplation of the written contract of lease. The evidence shows that Weishert placed the fixtures in the building with the knowledge and without objection on the part of the contractor, he knowing that they were being so placed under a written contract of lease of the building, and he made no objection thereto; consequently, Weishert was not a trespasser as to him. Weishert under his agreement with McConnell became the tenant of appellants in August or September, 1911, when he began giving shows in said building, and the note written by Merchant could not change this fact.

3. Our deductions from the facts in this case are: That the building was sufficiently completed in August, or at least in September, for Weishert to begin to use the same for the purposes for which he had leased it, and that he was not concerned in some additional work to be done under said contract. The uncontradicted evidence shows that he occupied said building at least as early as September, and gave one or more shows in the same prior to the time that Merchant wrote the note of October 10th. At this time it appears from the testimony of Moon that he was anxious to have McConnell & Merchant receive the building in fulfillment of the terms of his contract, and that they were unwilling to do so. Moon further testified that at this time he had heard something said about rents, and that he might be held for the same, and that he did not propose to be liable for rents upon the theory that Weishert was his tenant; and he further testified that Weishert was never his tenant.

We conclude from the whole testimony that there was at least a tacit agreement between the contractor and the owners of the building that Weishert might occupy and use the same as a theater, without either party waiving their rights under the contract with reference to the erection of said building. It appears that Weishert never at any time paid any rents, but the payment of rents is not necessary to establish the relation of landlord and tenant. Allen v. Koepsel, 77 Tex. 505, 14 S. W. 151. We think, under the facts of this case, when Weishert began to use the building for giving theatrical exhibitions, that he became liable under his contract with appellants for rents, and that, if the failure to complete the building was any detriment to him, he would have been entitled to a rebate to that extent. However, as above stated, it does not appear that the failure to complete the building was a detriment to Weishert as the proprietor of the theater.

We think the court erred in submitting to the jury the issue as to whether or not Weishert became liable for rents prior to October 25, 1911, and in making the rights of the parties depend upon said issue: First, because under the undisputed testimony there was no issue as to Weishert's having become responsible for rents prior to that time; and, second, for the reason, as above stated, that as between himself and appellants he was their tenant, whether liable for rents or not.

In view of the disposition which we make of this case, other assignments of error become immaterial.

For the reasons above stated, the judgment of the trial court is reversed and here rendered in favor of appellants.

Reversed and rendered.